BERGER, J.
Petitioner, David E. Manuel (“Manuel”), seeks certiorari review of the trial court’s non-final discovery order, which granted the State of Florida’s motion to compel the disclosure of a written competency evaluation performed by Dr. Jacquelyn Olander.[1] Because Dr. dander’s written competency evaluation is protected by the attorney-client privilege, we conclude that the trial court departed from the essential requirements of the law when it compelled production of the report.[2] Accordingly, we *1158 grant the petition for writ of certiorari and quash the order under review.
Manuel is charged with aggravated assault with a deadly weapon, fleeing or attempting to elude a law enforcement officer at high speed or with wanton disregard, and grand theft of a motor vehicle. He entered a plea of not guilty.
Prior to entering his not guilty plea, Manuel, through his Public Defender, filed a motion entitled “Motion that Defense Counsel has Reasonable Grounds to Believe Defendant is Not Competent to Proceed and Request for Hearing.” In the motion, defense counsel asserted that “[t]he Office of the Public Defender is in the process of conducting confidential psychiatric evaluations. These evaluations will be conducted in compliance with section 916.12, Florida Statutes (2010) and Rule 3.211, Florida Rules of Criminal Procedure.”
One of the confidential experts privately retained by Manuel is Dr. Jacquelyn dander. Her written report is the subject of this dispute. After Manuel filed his motion, the State moved to compel disclosure of Dr. Olander’s report pursuant to Florida Rule of Criminal Procedure 3.220(d)(l)(B)(ii), arguing it was entitled to the report because Manuel had elected to participate in discovery. Manuel objected, arguing that Dr. Olander’s report was confidential and protected by the attorney-client privilege.
At issue here is the applicability of the reciprocal discovery provision contained within Florida Rule of Criminal Procedure 3.220(d)(l)(B)(ii), which provides:
(B) Within 15 days after receipt of the prosecutor’s Discovery Exhibit the defendant shall serve a written Discovery Exhibit which shall disclose to and permit the prosecutor to inspect, copy, test, and photograph the following information and material that is in the defendant’s possession or control:
(i) the statement of any person listed in subdivision (d)(1)(A), other than that of the defendant;
(ii) reports or statements of experts made in connection with the particular case, including results ■ of physical or mental examinations and of scientific tests, experiments, or comparisons; and
(iii) any tangible papers or objects that the defendant intends to use in the hearing or trial.
(emphasis added). Relying on this provision and the Second District’s opinion in Kidder v. State, 117 So.3d 1166 (Fla. 2d DCA 2013), the trial court granted the State’s motion and compelled production of the report. This was error.
As will be discussed below, although Kidder provided support for the reasoning offered by the trial court to compel production of Dr. Olander’s report, we find the provisions contained within Florida Rule of Criminal Procedure 3.216(a) and section 916.115(2), Florida Statutes (2012), as well as the numerous decisions discussing the confidentiality of mental health evaluations, to be far more specific on the issue of whether the reports of mental health experts are protected by the attorney-client privilege.
Unlike the present case, Kidder involved the compelled production of results of a scientific test performed at the behest of the defendant on blood samples collected by law enforcement during a DUI manslaughter investigation. Id. at 1169. The defendant in Kidder was charged with DUI manslaughter and vehicular homicide and had elected to participate in discovery. Id. Pursuant to rule 3.220, the trial court *1159 granted the defendant’s motion to require law enforcement to send one of the two blood samples it collected to a specific laboratory for independent analysis. Id. Thereafter, the State moved to compel the defendant to provide it with the results of the analysis. The State argued that the analysis constituted the results of a “scientific test” pursuant to rule 3.220(d)(l)(B)(ii), and, thus, the State was entitled to those results because the defendant had previously elected to participate in reciprocal discovery. Id. The trial court ultimately granted the State’s motion to compel, which prompted Kidder to seek certiorari review. Id.
In denying Kidder’s petition, the Second District used rather sweeping language to address the same reciprocal discovery rule at issue in this case. With respect to Kidder’s claim that rule 3.220 only requires the disclosure of a scientific test when the defendant intends to call the testing expert as a witness, the Second District stated:
Participation in the discovery process is not mandatory for a criminal defendant: “a defendant may elect to participate in the discovery process provided by these rules_” Fla. R.Crim. P. 3.220(a). Once this election occurs, it “triggers a reciprocal discovery obligation for the defendant” and both the prosecution and defendant are then bound “to all discovery procedures contained in these rules.” Id.
The defendant’s reciprocal discovery obligation pertinent to the case at bar is set forth in rule 3.220(d)(l)(B)(ii) and requires a defendant to disclose and permit the inspection and copying of “reports or statements of experts made in connection with the particular case, including results of ... scientific tests, experiments, or comparisons.” See Abdool v. State, 53 So.3d 208, 219-20 (Fla. 2010) (applying rule 3.220(d)(1)(B)(ii) to penalty phase proceedings and holding that appellant was required to provide the State with raw data from his mental health expert). Based on the plain language of rule 3.220(d)(l)(B)(ii), Ms. Kidder was required to disclose to the State the results of the scientific test Wues-thoff conducted on the blood sample.
[[Image here]]
Subsection (d)(l)(B)(i), by referencing subsection (d)(1)(A), requires a defendant to provide the State with the statements of any person the defendant plans to call as a witness. Subsection (d)(l)(B)(iii) also specifically states that a defendant must provide to the State any tangible papers or objects that the defendant intends to use in a hearing or trial. Conversely, subsection (d)(l)(B)(ii) does not restrict the disclosure of reports of experts to only those experts a defendant plans to call as a witness. We conclude that the rule is clear and unambiguous in requiring a defendant to disclose the results of a scientific test like the one at issue in the present case, regardless of whether the defendant anticipates calling the person who conducted the test as a witness. See Weston TC LLLP v. CNDP Mktg. Inc., 66 So.3d 370, 375 (Fla. 4th DCA 2011) (‘When a rule is clear and unambiguous, courts will not look behind the rule’s plain language or resort to rules of construction to ascertain intent.”).
Id. at 1169-71 (footnote omitted).
We do not disagree with the Second District’s holding in Kidder. Rather, we find it distinguishable from the present case for two reasons. First, Kidder dealt with questions surrounding the disclosure of a “scientific test” under rule 3.220(d)(B)(ii), not a mental health evaluation. And, second, our sister court did not have to consider a challenge based on the attorney-client privilege.
*1160 With these distinctions in mind, we find it difficult to reconcile a Kidder-type view of “mental examinations” as they are referenced in rule 3.220(d)(l)(B)(ii) with the plain language of rule 3.216(a), addressing the appointment of an expert to aid defense counsel. Rule 3.216(a) provides:
Rule 3.216. Insanity at Time of Offense or Probation or Community Control Violation: Notice and Appointment of Experts
(a) Expert to Aid Defense Counsel. When in any criminal case a defendant is adjudged to be indigent or partially indigent, and is not represented by the public defender or regional counsel, and counsel has reason to believe that the defendant may be incompetent to proceed or that the defendant may have been insane at the time of the offense or probation or community control violation, counsel may so inform the court who shall appoint 1 expert to examine the defendant in order to assist counsel in the preparation of the defense. The expert shall report only to the attorney for the defendant and matters related to the expert shall be deemed to fall under the lawyer-client privilege.
(emphasis added).[3]
The rule contemplates that mental health experts appointed by the trial court for the purpose of determining the competency of indigent or partially indigent defendants are beholden to the attorney-client privilege. Although not expressly stated, the same must be true for experts privately retained for a similar purpose without the assistance of the trial court. See H.A.W. v. State, 652 So.2d 948, 949 (Fla. 5th DCA 1995) (holding “[w]hen a psychotherapist is employed by counsel for a defendant to assist him in preparing a defense for his client and not to treat the defendant, the state may not depose the expert or call him as a witness; this witness is subject to the attorney-client privilege.”); see also Lovette v. State, 636 So.2d 1304, 1308 (Fla.1994) (“We hold ... that the state cannot elicit specific facts about a crime learned by a confidential expert through an examination of a defendant unless that defendant waives the attorney/client privilege by calling the expert to testify and opens the inquiry to collateral issues.”); State v. Hamilton, 448 So.2d 1007, 1008 (Fla.1984) (“The rule emphasizes that the expert ‘shall report only to the attorney for the defendant and matters related to the expert shall be deemed to fall under the lawyer-client privilege.’ Thus, once an expert is appointed, all matters related to that expert are confidential. The rule is designed to give an indigent defendant the same protection as afforded to a solvent defendant. Further, and as important, in many instances the basis for the request for such an expert is founded on communications between the appointed lawyer and his client. Any inquiry into those communications would clearly violate the basic attorney-client privilege.”) (quoting the former version of rule 3.216(a)); Townsend v. State, 420 So.2d 615, 618 (Fla. 4th DCA 1982) (holding that privately retained psychiatrist is subject to the attorney-client privilege unless used as a witness); Pouncy v. State, 353 So.2d 640, 641 (Fla. 3d DCA 1977) (holding, generally, that the doctrine of attorney-client privilege bars the state from deposing and calling as witnesses psychiatrists hired by an accused or his counsel for the sole purpose of aiding in the preparation of an insanity defense, except in cases where the public interest in the administration of justice is undermined).
*1161 Section 916.115(2), Florida Statutes (2012), also supports the principle that a competency evaluation prepared by an expert retained by the defense is a confidential document. The statute, which addresses the appointment of experts for the purpose of determining competency, specifically states “[i]f the defense or the state retains an expert and waives the confidentiality of the expert’s report, the court may pay for no more than two additional experts appointed by court order.” Id. (emphasis added).
Based on the foregoing, we conclude that, without a waiver, rule 3.220(d)(1)(B)(ii) must give way to the protections afforded by the attorney-client privilege.[4] To hold otherwise would have the inevitable effect of depriving defendants of their right to the effective assistance of counsel. See United States v. Alvarez, 519 F.2d 1036, 1046-47 (3d Cir.1975) (“[T]he effective assistance of counsel with respect to the preparation of an insanity defense demands recognition that a defendant be as free to communicate with a psychiatric expert as with the attorney he is assisting.... [W]hen, as here, the defendant does not call the expert the same privilege applies with respect to communications from the defendant as applies to such communications to the attorney himself.... A psychiatrist will of necessity make inquiry about the facts surrounding the alleged crime, just as the attorney will. Disclosures made to the attorney cannot be used to furnish proof in the government’s case. Disclosures made to the attorney’s expert should be equally unavailable, at least until he is placed on the witness stand. The attorney must be tree to make an informed judgment with respect to the best course of the defense without the inhibition of creating a potential government witness”) (footnote omitted) (citation omitted).
Here, Dr. Olander was privately retained by defense counsel for the sole purpose of determining Manuel’s competence to proceed. Therefore, Dr. Olander’s report is protected by the attorney client privilege and not subject to disclosure absent a waiver of confidentiality. Because nothing in the record supports a conclusion that Manuel waived confidentiality, we hold the trial court departed from the essential requirements of the law when it overruled Manuel’s attorney-client privilege objection and ordered production of Dr. Olander’s report pursuant to rule 3.220(d)(l)(B)(ii).[5] Accordingly, we grant the petition for writ of certiorari and quash the order under review.
PETITION GRANTED.
ORFINGER and WALLIS, JJ., concur.

. See Allstate Ins. Co. v. Langston, 655 So.2d 91, 94 (Fla.1995) (finding a petition for writ of certiorari is appropriately filed when a discovery order departs from the essential requirements of law, causes material injury to a petitioner throughout the remainder of the proceedings below, and effectively leaves no adequate remedy on appeal).

. See Nussbaumer v. State, 882 So.2d 1067, 1072 (Fla. 2d DCA 2004) ("The entry of an *1158 order compelling the disclosure of communications protected by a legal privilege is a departure from the essential requirements of the law.”).

. On November 19, 2009, the Supreme Court amended rule 3.216(a) to its current form "to comport with the funding changes from county government to the state.” See In re Amendments to the Florida Rules of Criminal Procedure, 26 So.3d 534, 537 (Fla.2009).

. Similarly, the Second District recognized that the provisions of rule 3.220(d)(l)(B)(ii) would not result in the disclosure of the scientific report at issue in Kidder if, indeed, it could have been shown that the report contained protected work product. See Kidder, 117 So.3d at 1169. ("We agree that discovery of information that could be considered work product may cause such irreparable injury if disclosed. However, ... the Wuesthoff report does not contain work product.”) (citation omitted).

. We reject any contention that without Dr. Olander’s report the State has no way of knowing whether Manuel is competent to proceed. Pursuant to section 916.115, Florida Statutes, the State may request the trial court to appoint no more than three experts for the purpose of determining Manuel’s competency to proceed. See § 916.115, Fla. Stat.